Court, I am Rebecca Kurz from the Public Defender's Office, arguing on behalf of Mr. Ronald White. Mr. White challenges the sufficiency of the evidence to support his conviction for possession of an unregistered firearm. He essentially makes two bases for the challenge. One, that he did not constructively possess the firearm, and two, he did not know the characteristics of the weapon that made it subject to registration. Constructive possession requires that the defendant have knowledge of the object's presence, as well as control over the object. It's not established if the defendant only has control over the area where the firearm is found, but does not know that the firearm is there. In this case, the district court made the following factual findings. The duffel bag, which was in a closet in a home where Mr. White was staying, the duffel bag where the street sweeper was found had an Amtrak ticket in it with Ronald White's name on it. There was a .357 revolver in the bag, in addition to four other guns, including the street sweeper, and Mr. White's DNA was on that .357 revolver. His parents, the homeowners, denied any knowledge of the duffel bag or of the guns, and when Mr. White, he lived in California, and he'd travel back and forth to Kansas City. When he stayed with his parents, he would sleep in that bedroom, and he kept some clothing in that bedroom closet. Those facts established that he had constructive possession of that duffel bag. They don't establish that he had constructive possession of the street sweeper. There's no evidence from which it could be inferred that Mr. White knew the contents of the duffel bag, and if he doesn't know the contents of it, he doesn't have constructive possession over the street sweeper. In getting to whether Mr. White knew the characteristics of the street sweeper that made it subject to registration, the district court said, quote, the person possessing the gun is easily aware of the bore being more than a half inch in diameter. But the court never makes a specific finding that Mr. White ever saw the street sweeper, that he ever handled the street sweeper, that he ever loaded it, that he ever possessed any shotgun shells that would fit the gun. We don't know how the street sweeper got into the duffel bag, and we don't know when it got into the duffel bag. The Amtrak ticket that is in there is dated eight months prior to the date that the police did the search, the day they found the gun. So, maybe that .357 revolver was in the duffel bag at some point when he's traveling back and forth and using that bag. We have no, there's no indication whatsoever is when the street sweeper got in there or who put it in there. And this is not an instance of a case involving exclusive control that was continuous over a period of time. What we have, the police suspected that Mr. White was part of a gang. This is in the search warrant affidavit that's in the appendix, by the way. They thought he was a gang member. They were investigating some homicides that they hadn't solved, and they were looking at Andre Simmons and a man by the name of Terrence Diamond. Andre Simmons has his DNA on a stag arms rifle that's also in the duffel bag. We've got a mixture of at least three people's DNA on a Bushmaster rifle that was in the duffel bag. We've got at least three people's DNA on the Romearm Draco that was in the bag. We've got a mixture of at least two people on the street sweeper, but Mr. White is excluded from the DNA collected from the street sweeper. Now, the DNA reports, they don't say all of these unidentified profiles belong to the same three people. So there's, we know at least three other people are involved and that their DNA is on these guns, but it could be as many as eight different people. If these unknown files aren't all the same, you could have up to eight people. So the government argued that this gun, that it was a collection, and that Mr. White was like a wine connoisseur who picked a gun for each particular occasion. I think the facts that I just outlined with respect to the DNA, with respect to the police investigation, thinking that this was gang activity, these guns belong to a bunch of different people. And somehow they get rounded up and they wind up in this duffel bag, and the duffel bag gets put in the bedroom closet where Mr. White stays. From that, I think it's pure speculation to say that Mr. White had to know that street sweeper was in the duffel bag. Any one of those people could have put the street sweeper in there. What if the gun that has his DNA on it, the revolver, is in the bag, and somebody says, we gotta get rid of these guns. These guns are hot or whatever. We just don't want them. Somebody else, one of these other eight mysterious people round up the guns and hide them there. That doesn't mean that Mr. White knows the street sweeper is in the duffel bag. And I think... Aren't you making, basically, a jury argument that... I mean, at this point, don't we have to give all reasonable inferences to the verdict, right? You do. And what I'm saying... So you seem to be giving all the inferences the other way, that all these other possibilities, all reasonable, all possible, but... And it would also be possible that he put the street sweeper in the bag, and along with the .357, and he knew full well that it was in there. But what I'm saying is that's not an inference. I'm saying that that statement, you cannot be made without resorting to conjecture and speculation. So if you have two reasonable hypotheses, you're right, I lose. But you do have... But they have to be reasonable. You have the Amtrak ticket, you have his DNA. Ticket's eight months old. Eight months old. So we don't know when that got in there. Isn't it at least a reasonable inference that that means that he was in the bag at some point in time? I think it's a reasonable inference he's in the bag at some point in time, but was the street sweeper there? That's what we have to know. When you look... The cases that I cited in my briefs, and the cases also cited by the government, for these cases, there is always some fact that they saw the gun, they handled the gun. Usually, most of these are sought-off shotgun cases. And if you handle it, you can tell the weight's off and the barrel's too short. And those are easy cases. This is a hard case, but it's just speculation to say he knew it was in there. I think United States versus Pace. That's an Eighth Circuit decision. And I think that's a good example of what I'm talking about. There's a defendant. He's the driver of the car. Passenger's in the car. They've got duffel bags full of 200 pounds of cocaine that are worth millions of dollars. Driver gets stopped. He says, I don't know what's in those duffel bags. They just told me to drive the car and that's what I'm doing. Said he had his own duffel bag back there with his clothes and stuff in it. But he had no idea what was in the other ones. And the court refused to engage in any speculation and say, how could it possibly be that this guy does not know what he is doing? That he is actually a blind mule transporting hundreds of pounds of cocaine? And had a good point. Who would let him do that? Who would give him, I guess the passenger's there. Maybe he could be guarding the drugs as well. But to me, that's very unclose to this case and what you're saying. I mean, he's got the duffel bag and he's got his ticket in there. But the Eighth Circuit just refused to resort to that kind of speculation. I'm into my rebuttal time, if you don't mind. Thank you. Thank you. Good morning, your honors, and may it please the court. My name is Jeff MacArthur. I was the AUSA at the original trial, the initial brief and the in-bank brief as well as this one. At the in-bank panel, this court overturned its prior precedent and bar and ruled that knowledge that the defendant must have of the bore size was a necessary element in this crime. This case was retried and the defendant and that element was found by United States District Court Judge Roseanne Katchmark. I would note at first that as your honor noted, the defense counsel makes a point, there's a lot we don't know and speculates as to various reasons how the gun could have come to be in the bag. Well, the evidence presented need not exclude every reasonable hypothesis except for guilt and that is the standard in the circuit. In fact, if there's any construction of the evidence that could have permitted Judge Katchmark to have found beyond a reasonable doubt the elements of this offense, this court must affirm. The case that defense counsel cites, United States v. Pace is an opposite to the situation we have here. There was not nearly as much evidence as we have putting the defendant in direct control and having knowledge of that bag and its contents. We have a receipt inside the bag as Judge Grunder recognized. We have a ticket in the bag, both in the name of Ronald White. The location of the bag was inside of a closet of a bedroom where Ronald White stayed almost exclusively at his parents' house. They disclaimed knowledge of the bag or its contents and both of his parents explained that is the closet and the room in which the defendant stayed. In fact, his clothes were in that closet. There were no inferences to be drawn from United States v. Pace. There are numerous inferences to be drawn here along with circumstances of where that duffel bag was. We also have DNA located on a .357 revolver located inside of the bag directly next to this street sweeper shotgun. And so as to constructive possession, there is numerous evidence that the District Court could draw upon to make the reasonable inference that, of course, where this bag was, his DNA inside of the bag, Ronald White had knowledge and was in constructive possession of that bag. He could control that area. He had keys to the house. He could come and go as he pleased. Now, the main point of this argument before this court, I believe, is probably the defendant's knowledge of the bore size at issue. And indeed, the District Court judge found that knowledge of the bore size is an obvious characteristic on the firearm by anyone who possesses it. And indeed, we have a bore size of .752 inches. The bore size need only be more than 1 1⁄2 inch. I would note that the DNA that was on the .357 caliber revolver, the bore size of that gun is less than half of what the bore size is on the Streetsweeper. In fact, all 12-gauge shotguns in existence have a bore size on average of .729 inches, which obviously would be well above the .5 inch cutoff. We have evidence that was submitted on the record by Ron Davis, a firearms expert, who noted that the bore was even oversized on this gun. And so it would take, it would have to be quite far afield for any reasonable interpretation of the evidence that Mr. White, being in possession of this firearm, having been inside of that gun, we know by the presence of his DNA, that he would have zero knowledge. And in fact, this is something that the court obviously found there wasn't a reasonable inference to conclude that he knew that the bore was the size it was. In fact, at trial, our ATF expert, Ron Davis, showed the court, through the use of different dowel rods that he created, about the significant difference between .5 inches and .75 inches. It is actually quite significant. I'd also note that this Streetsweeper shotgun, and as the court recognized in its initial opinion, its initial panel opinion, this is a unique-looking firearm. This is something that catches the eye. It basically looks like an oversized Tommy gun. It is a shotgun, unlike any shotgun that is out there. It is essentially a shotgun that can spout off 12 rounds in three seconds because of the utility of this drum magazine that it has on it. And so anyone in possession of this gun, as the district court concluded, could obviously tell the size of the bore. Here we have 12-gauge written on the side of the firearm, which indicates that, in fact, it was a 12-gauge. And I cite to a Fifth Circuit case where there actually was judicial notice that was taken that all 12-gauge shotguns have a bore of more than 1 1⁄2 inch. This was apparent written on the side of the gun. It was also a loaded gun with five rounds of 12-gauge ammunition that anyone loading a 12-gauge shotgun shell, in contrast to, say, a .357 round, could see that it's a much, much bigger bullet. This court, in the past, and as is cited in the government's brief, I cite to the Eighth Circuit case of the United States v. Backer, which notes that, in that case, there was no direct evidence of knowledge of the characteristics of the firearm. In that case, that was at issue. That was a machine gun. But the court concluded that the external mods were obvious in that case, and therefore, a reasonable inference could be drawn that the defendant knew of the characteristics of that firearm. I would also note that this circuit noted in a footnote, in its in-bank opinion, that's footnote eight, the fact that all 12-gauge shotguns have a bore of more than .5 inches is an inference that can be drawn from a practicality. The court did not consider that inference in its opinion because that would be an argument better served for a jury and an inference that they could draw from the facts, while, in fact, it appeared that District Court Judge Ketchmark did draw that very inference from the facts, along with the obvious appearance of the firearm. In regards to that obvious characteristics, I cite to several cases in my brief wherein the defendant, where there is no direct evidence, there is no statement by the defendant saying, I am aware of the incriminating characteristics of my firearm. That is United States v. Miller out of the 11th Circuit, United States v. Moore out of the D.C. Circuit, United States v. Foster out of the D.C. Circuit. In all of these cases, the incriminating nature of the firearm itself, the open and obvious characteristic, allowed the District Court to infer knowledge at that point, allowed the jury to infer knowledge. The same should be found here. Here, the bore size is an obvious characteristic as District Court Judge Roseanne Ketchmark found. I'd also note, though it's an unpublished opinion, I do cite to it in my brief, there is an Eighth Circuit case, United States v. Hutchins, 292 Fed Appendix 842 from 2008, that is in regards to the length of a shotgun barrel. And this court noted that, testimony about the length of the gun's barrel and the admission of the gun into evidence can be sufficient circumstantial evidence from which a jury could infer the defendant knew the length of the gun barrel was less than 18 inches. Now, that involves the length of the barrel. This involves the diameter of a bore. But the same logic should apply here. What was the specific evidence about the access to the room where the duffel bag was found? Yes, sir. So there was evidence that Mr. White had a key to the home. His parents gave him permission to come and go as he pleased. I believe he had code access to the garage door as well. The room in which this gun was found in the closet of that room, this was the room exclusively where Ronald White stayed every time that he visited. He had clothing that he kept inside of the room. He had, and specifically in the closet, right next to where this duffel bag was found. And inside of the bag was evidence that Ronald White had used this bag on numerous occasions. We have an Amtrak train ticket in his name. We have a receipt from a different circumstance in his name. Were there other occupants of the home other than the parents? So other than Ronald White's parents, they were the only exclusive occupants of the residence. Occasionally, children would come and stay at the residence but as to that room specifically, the parents indicated that occasionally someone else might stay, but that was Ronald White's room whenever he came to visit as his usual residence was in the Los Angeles area. There are no further questions? Thank you both. Thank you all. I'd like to distinguish a couple of the cases that counsel referred to. In U.S. Backer, there definitely was direct evidence that he knew the characteristics of his gun. It too was a street sweeper. And the facts were is that he had his street sweeper along with several other guns laid out on his bed and he was pointing them out to a friend. He can see the street sweeper right there so he knows the bore diameter. So that would be direct evidence. You gotta see it or you gotta handle it in some way. I would mention the Michelle case out of the 10th Circuit. It's M-I-C-H-E-L. It's in the brief. Driver and passenger are riding in a car. There is a shotgun behind them in the back seat. They get stopped for a traffic violation. The passenger keeps reaching behind him trying to hide that gun. It's obviously he knows of its presence. The question is does he know that it has a shortened barrel below 18 inches? And the court said, no, that is speculation. We can't go that far. We can uphold a conviction for being a felon in possession of a firearm, but we can't convict him of possession of an unregistered. That unless there was proof that he saw or handled that gun or in some other way knew that it had to be registered because of the shortened barrel, they weren't gonna convict. Counsel also referred to the Miller case and the Moore case. I distinguished those in my reply brief. I would just encourage you to look at those. Every single one of these cases, we have some fact that indicates knowledge of the characteristics, whether it's seeing it or handling it. Thank you. Thank you, Ms. Kersh. Counsel, we appreciate your arguments today. The case will be submitted and decided in due course. Mr. Shade is.